UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| COMCAST OF SACRAMENTO I, LLC; COMCAST OF SACRAMENTO II, LLC; and COMCAST OF SACRAMENTO III, LLC;<br><br>    Plaintiffs,<br><br>    v.<br><br>SACRAMENTO METROPOLITAN CABLE TELEVISION COMMISSION and DOES 1 through 20,<br><br>    Defendant. | Civ. No. 2:16-1264 WBS EFB<br><br>ORDER RE: MOTION FOR RECONSIDERATION |

----oo0oo----

Plaintiffs Comcast of Sacramento I, Comcast of Sacramento II, and Comcast of Sacramento III brought this action against defendant the Sacramento Metropolitan Cable Television Commission, seeking the return of a security deposit plaintiffs' predecessor-in-interest provided to defendant some thirty-three years ago. (Compl. (Docket No. 1).)

An issue of dispute in this action is whether defendant

1

is entitled to offset the security deposit by state franchise fees that plaintiffs purportedly underpaid defendant for the 2011 and 2012 calendar years. (See Docket No. 22-1 at 5, 7-9.)

Federal law caps the amount of "franchise fees paid by a cable operator with respect to any cable system . . . [at] 5 percent of such operator's gross [annual] revenues." 47 U.S.C. § 542(b). Under California law, plaintiffs are required to pay a state franchise fee of five percent of their gross annual revenues to defendant. See Cal. Pub. Util. Code § 5840(q); (Decl. of Ann Peling ("Peling Decl.") ¶ 7 (Docket No. 21-2)). Plaintiffs are also required, under California law, to pay an annually determined administrative fee ("CPUC fee") to the California Public Utilities Commission. See Cal. Pub. Util. Code § 441; (Peling Decl. ¶ 6).

Plaintiffs contend that the CPUC fee is itself a "franchise fee" under federal law, and thus counts towards the federal five percent cap on franchise fees. (See Docket No. 21-1 at 7.) Because the CPUC fee counts towards the federal five percent cap on franchise fees, plaintiffs contend, they were and are entitled to deduct that fee from the state franchise fee so that the total franchise fees they pay do not exceed five percent of gross revenues. (See id. at 7-10.) Pursuant to that contention, plaintiffs unilaterally deducted the CPUC fee from the state franchise fee for the 2011 and 2012 calendar years. (See Peling Decl. ¶ 7.) Defendant contends that the CPUC fee is not a "franchise fee" under federal law, and thus plaintiffs were and are not entitled to deduct that fee from the state franchise fee pursuant to the federal five percent cap. (See Docket No.

2

22-1 at 7-9.)

Federal law defines "franchise fee" to include "any tax, fee, or assessment of any kind imposed by a franchising authority or other governmental entity on a cable operator . . . solely because of [its] status as such." 47 U.S.C. § 542(g)(1). Excluded from "franchise fee" is "any tax, fee, or assessment of general applicability (including any such tax, fee, or assessment imposed on both utilities and cable operators or their services but not including a tax, fee, or assessment which is unduly discriminatory against cable operators . . . )." Id. § 542(g)(2)(A).

On April 5, 2017, the court issued an order ("April 5 order") in which it held that the CPUC fee is not imposed on cable operators "solely because of their status as such" and is a fee of "general applicability," and thus is not a "franchise fee" under federal law. (Apr. 5, 2017 Order at 14-16 (Docket No. 31).) In holding that the CPUC fee is not imposed on cable operators "solely because of their status as such" and is a fee of "general applicability," the court relied upon the premise that "it is possible to qualify for [the CPUC] fee without being a cable operator." (Id. at 14.) The court cited, as an illustration of that premise, language from Cty. of Los Angeles v. Time Warner NY Cable LLC, No. CV 12-6655 SJO (JCx), 2013 WL 12126774 (C.D. Cal. July 3, 2013) stating that "[the CPUC] fee is . . . imposed on such non-cable operator video service providers as Netflix, RedBox, and Blockbuster." (Id.) The court also noted that its holding that the CPUC fee is not a "franchise fee" under federal law accords with Zayo Group, LLC v. Mayor & City

3

Council of Baltimore, No. JFM-16-592, 2016 WL 3448261 (D. Md. June 14, 2016) and City of Eugene v. Comcast of Oregon II, Inc., 359 Or. 528 (2016), which each held fees that are not imposed only on cable operators to be excluded from the federal definition of "franchise fees." (Id. at 15-16.)

Plaintiffs now move for reconsideration of the court's holding that the CPUC fee is not a "franchise fee" under federal law. (Pls.' Mot. (Docket No. 39).) They offer two grounds for their Motion: (1) documents purporting to establish that Netflix, RedBox, and Blockbuster are, in fact, not subject to the CPUC fee, and (2) arguments that the fees at issue in Zayo Group and City of Eugene are distinguishable from the CPUC fee. (See Pls.' Mot., Mem. ("Pls.' Mem.") at 4, 10 (Docket No. 39-1).) Citing such grounds, plaintiffs ask the court to reconsider its decision and enter judgment in their favor for the full security deposit. (Id. at 2.)

Federal Rule of Civil Procedure 59(e) allows a party to move for reconsideration of an order granting summary judgment within twenty-eight days of entry of judgment.[1] Motions for reconsideration seek an "extraordinary remedy," one "to be used sparingly in the interests of finality and conservation of judicial resources." Kona Enterprises, Inc. v. Estate of Bishop, 229 F.3d 877, 890 (9th Cir. 2000). Such motions "should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed

---

[1] It is undisputed that plaintiffs' Motion was timely filed.

4

clear error, or . . . there is an intervening change in the controlling law." 389 Orange St. Partners v. Arnold, 179 F.3d 656, 665 (9th Cir. 1999). Newly discovered evidence meriting reconsideration of an order must be "of such magnitude that production of it earlier would have been likely to change the disposition of the case." Cranmer v. Tyconic, Inc., 278 F. App'x 744, 746 (9th Cir. 2008) (internal citation omitted).

The documents plaintiffs offer for the assertion that Netflix, RedBox, and Blockbuster are, in fact, not subject to the CPUC fee would not have changed the court's holding that the CPUC fee is not a "franchise fee" under federal law. That Netflix, RedBox, and Blockbuster may not be subject to the CPUC fee does not undermine the broader premise that the CPUC fee does not apply only to cable operators.

Federal law defines a "cable operator" as "any person or group of persons (A) who provides cable service over a cable system and directly or through one or more affiliates owns a significant interest in such cable system, or (B) who otherwise controls or is responsible for, through any arrangement, the management and operation of such a cable system." 47 U.S.C. § 522(5). The CPUC fee applies to "[a]ny person or corporation who seeks to provide" "video programming services, cable service, or [open video system] service . . . through facilities located at least in part in public rights-of-way without regard to delivery technology." See Cal. Pub. Util. Code §§ 441, 5830(s), and 5840(c). By definition, the CPUC fee may reach entities that do not fall under federal law's definition of "cable operator." An entity that provided video programming using publicly-located

5

cables it did not own, control, or have responsibility for, for example, was held not to be a "cable operator" under federal law, see City of Chicago v. F.C.C., 199 F.3d 424, 427, 431-33 (7th Cir. 1999), but would appear to fall within the definition of entities subject to the CPUC fee.[2] An entity that provides video programming using a publicly-located "open video system," and not a cable system, would also appear to fall within the definition of entities subject to the CPUC fee without meeting federal law's definition of "cable operator." See 47 U.S.C. § 522(7) (excluding "open video system" from "cable system").

Plaintiffs claim that the Federal Communications Commission ("FCC") has interpreted "cable operator" to encompass all the entities that may be subject to the CPUC fee. (See Pls.' Reply at 4 (Docket No. 41).) Nothing in the FCC reports cited by plaintiffs expands the definition of "cable operator," however. One report states that 47 U.S.C. § 542, which sets forth franchise fee requirements for "cable operators," "do[es] not distinguish between incumbent[ cable operators] and new entrants." In the Matter of Implementation of Section 621(a)(1) of the Cable Commc'ns Policy Act of 1984 As Amended by the Cable Television Consumer Prot. & Competition Act of 1992, 22 F.C.C. Rcd. 5101, 5165 (2007). But the "new entrants" the report speaks of are entities that meet federal law's definition of "cable

---

[2] Plaintiffs represented at oral argument that the entity at issue in City of Chicago did not provide video programming using publicly-located cables. That representation is incorrect. See City of Chicago, 199 F.3d at 427 (noting that the entity at issue transmitted "video signals [to customers] . . . by fiber optic and coaxial cables, which are located in the public right-of-way").

6

operator." See id. at 5104 ("Any new entrant seeking to offer 'cable service' as a 'cable operator' becomes subject to the requirements of [federal franchising law]." (emphasis added)). The FCC reports plaintiffs cite do not show that the term "cable operator" is synonymous with the set of entities that may be subject to the CPUC fee.

Plaintiffs' arguments that the fees at issue in Zayo Group and City of Eugene are distinguishable from the CPUC fee are also insufficient to change the court's determination that the CPUC fee is not a "franchise fee." The court merely noted in the April 5 order that its holding with respect to the CPUC fee "accords with the position of [those cases]." (Apr. 5, 2017 Order at 15-16.) Neither case was necessary to the holding.

IT IS THEREFORE ORDERED that plaintiffs' Motion for reconsideration of the April 5, 2017 order be, and the same hereby is, DENIED.

Dated: August 11, 2017

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE